Robert Edward HOLMAN, Jr., Appellant,

v.

Martin John ROESS, III, Appellee.

No. 16869.

United States Court of Appeals
Fifth Circuit.

April 2, 1958.

W. N. Avera and Scruggs, Carmichael & Avera, Gainesville, Fla., for appellant.

Willard Ayres and Greene, Ayres & Greene, Ocala, Fla., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and TUTTLE, Circuit Judges.

BORAH, Circuit Judge.

Robert E. Holman, Jr., brought this action against Martin John Roess, III, under Section 768.03, Florida Statutes, F.S.A., to recover damages for the alleged wrongful death of his minor son, Robert E. Holman, III, who died as a result of gunshot wounds inflicted by his companion, Roess, while engaged in hunting wild turkeys. In the complaint it was alleged that Roess did carelessly and negligently fire and discharge a rifle in the direction of the decedent, striking him in the back of the head and on the right thumb with the projectile or projectiles therefrom, and inflicting severe bodily injuries from which the latter died. In his answer the defendant admitted that he shot Holman, but he denied that he was in any manner guilty of the acts of negligence charged. Other recitations in the answer need not be here stated, for at the pre-trial conference it was stipulated that the sole issue to be tried would be the negligence vel non of the defendant.

The cause came on for trial and at the close of all of the evidence, plaintiff moved for a directed verdict on the grounds, in essence, that there was no genuine issue of fact for the jury to

decide and that the uncontradicted testimony of the defendant showed him to be negligent as a matter of law. Following the court's denial of this motion, the case was submitted to the jury, which returned a verdict in favor of the defendant. Whereupon, plaintiff moved the court to set aside the verdict and to enter a judgment n. o. v. in his favor, or in the alternative, to grant a new trial. This motion was in all respects denied and plaintiff has appealed.

On this appeal, appellant relies on three points. The first two assign as error the refusal on the part of the court to grant his motions for a directed verdict and for judgment n. o. v., and the third relates to the claimed error on the part of the court in permitting defense counsel, over objection, to inquire as to the motive of the appellee in instituting the present action.

Coming now to appellant's first and second points, we think it plain from a consideration of the attending facts and circumstances that the question of negligence here presented was one peculiarly within the province of the jury to decide and that the trial judge rightly so concluded in refusing to grant appellant's motions.

The evidence, when viewed in the light most favorable to the appellee, established these facts: On November 21, 1955, plaintiff's seventeen year old son, Robert, and the defendant Roess, who was sixteen years of age, were, with their parents' knowledge and permission, jointly engaged in hunting wild turkeys. Both of the boys were experienced hunters, had previously hunted game together, and each of them had been trained by his father in the use of firearms and had been taught never to shoot at an object in the woods, moving or otherwise, without first being certain of the identity of the object at which he was shooting. On the morning of the day in question and before dawn, they left Silver Springs, Florida, by canoe and paddled down the Silver Springs

Run a distance of three to four miles. The defendant Roess was wearing a khaki shirt and a jacket not otherwise described and had brought along a high-powered 25/20 Winchester rifle which he was accustomed to shoot. Holman, dressed in dungarees, had with him a 12 gauge shotgun. As they drew near an island known as Monkey Island, they beached the canoe and walked inland a distance of fifty or sixty yards to a spot where Roess had on the preceding day seen wild turkeys going to roost. The terrain in this general area was low and swampy; there were few clearings among the tall pine trees; and on the ground were many logs, tree stumps, and in some places, a heavy growth of underbrush and vines. By mutual agreement, Holman took his stand at the edge of a clearing by a large tree facing the turkey roost. With his companion thus located, Roess circled to his right and took his station or stand in the wooded area facing the turkey roost with Holman directly to his right on the far side of the clearing at an angle of ninety degrees. He seated himself on a log with his gun on his lap and while sitting there the first live object which he saw was a rabbit which came hopping along about ten yards away. Shortly thereafter the blackish-blue turkeys flew down from the roost and were clucking, yelping and making considerable noise. And as it began to get somewhat lighter, Roess saw a turkey on a log directly in front of him, approximately thirty to forty yards away, which he identified as a gobbler by the beard and red wattles which were its distinguishing markings. Slowly he raised his rifle, aimed at its breast, and when he fired the bird fell forward from the log at an angle toward him. For several minutes thereafter he heard the bird flopping around on the ground and then he saw the turkey raise its head, and concluding that he had only wounded the bird, Roess fired again at the head and as he did he saw it fall over. After waiting for a while and continuing to look toward the place where he

had shot, it became bright enough for him to see more clearly, and Roess then discovered that what he had believed to be the wing of the turkey moving in the underbrush was, in fact, the leg of his companion, Holman. Whereupon he ran to the spot where Holman was lying which was beyond some logs directly in front of him, but in his excitement he neither saw nor searched for the wounded turkey. Upon reaching Holman, he found that his companion, who had a through-and-through bullet wound in his right hand and another wound through-and-through his head, was unconscious. Roess then began yelling for help and receiving no response, he picked up the body, carried it to the canoe, and paddled down the river continuing to call for help. Eventually he received assistance, and Holman was taken to a hospital where, on the following day, he died.

■ The record standing thus we think there was sufficient probative evidence with the inferences that the jury could draw therefrom to justify the court's submission of the case to the jury and to support the verdict for the appellee. The questions at issue were questions of fact, and from the evidence presented, considered in the light most favorable to the appellee, the jury could reasonably find, as it doubtless did, (1) that Roess did fire at a turkey on the log and that the bullet struck his companion at a place beyond the log; (2) that the decedent had moved from his station into the line of fire; and (3) that the appellee's conduct met the standard of care imposed upon him in handling his rifle.

■ "Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury verdict, the jury is free to disregard or to disbelieve whatever facts are inconsistent with its conclusion and the appellate court's function is ex-hausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference and feel that another conclusion is more reasonable." Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 744, 90 L.Ed. 916.

■ As to appellant's third and final point, we think it plain that the court did not err in permitting defense counsel to elicit on cross examination of appellant the testimony complained of. The record shows that on direct examination the appellant testified that he and his family had moved from the State of Florida in order to divorce themselves from anything that would remind them of their former life in Florida and the tragic death of their son. Such testimony was, of course, supportive of appellant's claim to damages for pain and suffering resulting from the death of his son in that the jury could very well have concluded therefrom that appellant and his wife were so overcome with anguish and grief as a result of their son's death that they could not bear the thought of remaining any longer in the State of Florida. Appellant having thus introduced this issue into the case, it was entirely proper that defense counsel be permitted to examine him as to his motive in leaving the state. The cross examination under the court's ruling was confined to the direct examination and as a result the appellee succeeded in getting the appellant to admit that one of the many factors that influenced him in leaving Florida was his desire to file the instant suit in the federal court. Thus it appears that appellant's third point is without factual basis for the evidence of which he complains and which was harmless was directed not to his motive for filing suit in the federal court, but to his motive in leaving the State of Florida.

The judgment appealed from is, therefore, affirmed.

Affirmed.